AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

5/6/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ib___ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DUSTIN LOUIS PALMER,<br><br>Defendant(s) | Case No.  2:22-mj-01811-duty |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On March 30, 2022, in the county of San Luis Obispo in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g) | Felon-In-Possession of Ammunition |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Justin Francis
*Complainant's signature*

Justin Francis, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  5/6/2022

*Judge's signature*

City and state:  Los Angeles, California      Alexander F. MacKinnon, U.S. Magistrate Judge
*Printed name and title*

AUSA: Lynda Lao (x7167)

**AFFIDAVIT**

I, Justin Francis, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Dustin Louis Palmer ("PALMER") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Task Force Officer ("TFO") for the Federal Bureau of Investigation ("FBI") in Santa Maria and have been so employed since September 2021. I have been a duly sworn Deputy with the San Luis Obispo County Sheriff's Department since January 2020. In addition to my time as a TFO, I was previously employed as a Police Officer for the Pismo Beach Police Department for four years and Fullerton Police Department for three years.

4.   In March of 2012, I graduated from the Golden West Community College Basic Law Enforcement Academy in Huntington Beach, California. At the Basic Law Enforcement Academy, I completed approximately 780 hours of instruction in basic police practices and procedures. I hold a Peace Officers Standards and Training Basic Certificate.

5.   Upon graduation, I was assigned to the Fullerton Police Department as a Police Officer and worked uniformed patrol for three years. I then transferred to the Pismo Beach Police Department Patrol Division as a police officer and worked uniformed patrol for a total of two years. While on patrol, I conducted, as well as participated in, numerous preliminary investigations including, but not limited to, missing persons investigations, crimes of burglary, robbery, sexual assaults, identity theft, larceny, assaults, auto-theft, weapon violations, mail thefts, and various narcotics related offenses.

6.   I worked approximately two years as a Gang Task Force investigator for the San Luis Obispo County Sheriff's Department. As a Gang Detective, I assisted with investigations documenting gang members for previously reported crimes including, but not limited to, wanted documented gang members and/or associates, gang enhancements, assaults, larceny, and narcotics investigations. I have personally arrested and/or investigated subjects for the possession of stolen property and thefts.

7.   I have received numerous hours of in-service training, consisting of briefings, lectures, online training and classes

2

on various subjects including, but not limited to, gangs, firearms laws, DNA collection, synthetic drugs, coroner investigations, search and seizure, narcotics, domestic violence, pharmaceutical drug abuse, identity theft, officer involved shooting, and field sobriety tests. I have also received training related to cellular phones and mobile devices, as well as narcotic investigations, including how to conduct surveillance, perform an arrest, and handle, weigh, and field test suspected narcotics.

### III. SUMMARY OF PROBABLE CAUSE

8. On March 30, 2022, Atascadero Police Department ("APD") received a call from J.D., stating that he witnessed a man washing a white car in the driveway of a residence in Atascadero with handgun visible in the back pocket of his pants. J.D. provided a photograph to APD showing two males standing in the driveway of the residence. J.D. identified the man with the firearm as being a white male adult in his 30's, bald, with tattoos "all over his head," and wearing a white T-shirt and baggy blue jeans.

9. Officers identified the man from photographs as PALMER, and learned that PALMER was currently on parole following his conviction for being a felon in possession of a firearm, and was an associate of the Aryan Brotherhood prison gang. Shortly thereafter, officers saw PALMER driving away from the residence in the front passenger seat of a white Jeep. Based on this information, officers conducted a traffic stop and

searched PALMER's person, and found a single .38 Special round of ammunition in PALMER's front pocket.

10. Officers then searched the Jeep and found: (1) another single .38 Special round of ammunition on the floor in between the front passenger seat and the front passenger door jam; and (2) a revolver on the rear floorboard behind the front passenger seat loaded with five rounds of .38 Special ammunition.

## IV. STATEMENT OF PROBABLE CAUSE

11. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. APD Receives a Call Regarding a Male Subject in Possession of a Firearm**

12. On March 30, 2022, at approximately 12:25 p.m., APD received a call from J.D., reporting that he had seen a man with a handgun in the back pocket of his pants. J.D. said he saw the man washing a white vehicle in the front driveway of a residence located at 5444 Hermosilla Avenue in Atascadero. J.D. described the man as a white male adult in his 30's, bald, with tattoos "all over his head," wearing a white T-shirt and baggy blue jeans.

**B. APD Corporal Vasquez Contacts J.D.**

13. Later on March 30, 2022, APD Corporal Vasquez contacted J.D. who provided further details about what he had seen. J.D. stated he saw a white male adult with a 1911 style gun in his back pocket washing a white 4-door Lincoln sedan. J.D. said the handgun had a cherry or burgundy wooden handle.

4

J.D. explained that he was concerned because he had seen kids in the yard earlier in the day. J.D. provided Corporal Vasquez with photographs of the vehicle the white male adult was washing, as well as a black BMW that was parked in front of the residence.

14. J.D. stated that the white male had just left the house and was speaking with a Hispanic male, who was the driver of the black BMW. J.D. said the white male had swastika tattoos on the back of his head, as well as neck tattoos and sleeve tattoos. J.D. provided a photograph of the both males to Corporal Vasquez.

### C. Detective Rodriguez Conducts Surveillance of 5444 Hermosilla Avenue

15. Corporal Vasquez then requested the assistance of Detective Rodriguez to conduct surveillance at 5444 Hermosilla Avenue. Corporal Vasquez briefed Detective Rodriguez about the information received from J.D. and provided Detective Rodriguez with a photograph of the subject suspected to be in possession of the firearm. After checking DMV records for the license plate number of the black BMW at the residence, Corporal Vasquez determined that one of the vehicles matched the description of a BMW sedan that was recently reported stolen.

16. Detective Rodriguez parked an unmarked vehicle on Hermosilla Avenue, just west of the intersection with Cayucos, where he could conduct surveillance at 5444 Hermosilla. He observed the suspected stolen black BMW parked in front of the residence. A short time later, a silver Jeep Grand Cherokee

pulled up to the residence and parked. A male exited the driver seat of the Jeep and walked up the driveway.

17. During surveillance, Detective Rodriguez forwarded the photograph of the subject that J.D. provided to San Luis Obispo Sheriff's Detective Reinhardt. Detective Reinhardt informed Detective Rodriquez that he knew the subject wearing the white T-shirt from previous encounters, and that the subject was PALMER. Detective Reinhardt told Detective Rodriguez that PALMER was currently on CDC Parole and is an associate of the Aryan Brotherhood Prison Gang. Detective Rodriguez confirmed with APD that PALMER was on Parole for a violation of California Penal Code Section 29800(a), Felon in Possession of a Firearm.

18. At approximately 3:33 p.m., Detective Rodriguez observed the black BMW leaving the residence. He informed the surrounding units of the direction the BMW was traveling. APD Officer Yeaman-Sanchez conducted a traffic stop and confirmed that the BMW had a fake license plate and was stolen. Officer Yeaman-Sanchez informed Detective Rodriguez that the sole occupant of the BMW matched the description of the male subject who was photographed next to PALMER.

19. At approximately 3:40 p.m., Detective Rodriguez observed a white Lincoln sedan and the silver Jeep Grand Cherokee leave the residence. Detective Rodriguez saw that the Jeep was occupied by at least one male subject, but he could not see how many people were in the white sedan. Detective Rodriguez believed the white sedan to be the vehicle PALMER was reported to be washing when J.D. saw him in possession of a firearm, and

requested the surrounding patrol units to conduct a traffic stop on both the white sedan and silver Jeep Grand Cherokee.

### D. Officer Nobriga Conducts a Traffic Stop of the Silver Jeep Grand Cherokee

20. APD Officer Nobriga parked his marked patrol unit on Lobos Avenue, just north of Hermosilla Avenue, when he noticed the white Lincoln sedan and the Jeep Cherokee traveling towards him. Once the Jeep passed Officer Nobriga, he was able to identify the individual in the passenger seat as PALMER. Officer Nobriga conducted a traffic stop of the Jeep. When the Jeep pulled over, the white sedan also pulled over.[1]

21. After additional police units arrived, Officer Nobriga conducted a high-risk traffic stop of the Jeep due to the possibility that PALMER was carrying a firearm. Officers removed the driver of the vehicle and detained him in handcuffs. During a pat down of the driver for weapons, Officer Nobriga felt an object he believed to be drug paraphernalia. Officer Nobriga removed the object and recognized it as a "tooter" straw — commonly used to smoke/snort illegal narcotics. The driver was detained in the back seat of Officer Nobriga's patrol vehicle.

22. Officers then removed PALMER, who was seated in the front passenger seat. Once PALMER was removed from the vehicle, he was detained in handcuffs. Officer Stucky conducted a search of PALMER's person. During that search, Officer Stucky located a single .38 Special round in his front right pocket.

---

[1] The occupants of the white Lincoln sedan exited the vehicle. Corporal Vasquez determined the driver had an active warrant for her arrest, and he arrested her.

23. Officer Nobriga and Officer Stucky proceeded to search the Jeep. In the front passenger side of the Jeep, Officer Nobriga located a .38 Special round on the floor in between the front passenger seat and the front passenger door jam. Additionally, Officer Nobriga located a broken glass pipe containing white residue on the front passenger side floorboard. In the center console, in the cup holder, Officer Nobriga found a white crystalline substance, which he recognized to be methamphetamine (approximately .98 grams) in a folded piece of aluminum foil, as well as another small white colored tooter straw.

24. Officer Stucky searched the back seat of the Jeep and found, in plain view, directly behind the passenger seat, a handgun. On closer inspection of the handgun, Officer Stucky discovered it was a short barrel revolver with blue steel and a dark brown wooden grip. Prior to retrieving the handgun, officers took photographs of the location and condition of the handgun before moving it. Officer Stucky then retrieved and inspected the handgun and noted the weapon was fully loaded with five rounds of .38 Special ammunition, the same type of round which was found in PALMER's pocket. No other contraband was located during the search of the Jeep.

**E.    PALMER's Criminal History**

25. On or about May 5, 2022, I reviewed PALMER's certified conviction records and learned that PALMER has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

      a.    On or about August 23, 2003, a violation of California Penal Code 245(a)(1), Assault Involving Great Bodily Injury and with Deadly Weapon, in the Superior Court of the State of California, County of San Luis Obispo, Case Number F348901;

      b.    On or about October 9, 2004, a violation of California Penal Code 496(a), Receiving Stolen Property, in the Superior Court of the State of California, County of San Luis Obispo, Case Number F364153;

      c.    On or about November 10, 2010, a violation of California Health and Safety Code Section 11379(a), Possession of a Controlled Substance for Sale, and a violation of California Penal Code 12021(A)(1), Felon in Possession of a Firearm, in the Superior Court of the State of California, County of San Luis Obispo, Case Number F454048;

      d.    On or about February 13, 2013, a violation of California Health and Safety Code Section 22370.1(a), Possessing a Drug While Armed; a violation of California Penal Code 186.22(B)(1), Committing a Felony in Association with a Street Gang; and a violation of California Penal Code 29800(A)(1), Possession of a Firearm by a Felon, in the Superior Court of the State of California, County of San Luis Obispo, Case Number F486263001; and

      e.    On or about April 10, 2014, a violation of California Health and Safety Code Section 11378, Transport of Dangerous Drug Controlled Substance for Sale, in the Superior

Court of California, in the County of San Luis Obispo, Case Number 14C13448.

    **F. Interstate Nexus**

26. On May 3, 2022, FBI Special Agent Brian Sullivan, a certified interstate nexus specialist, examined the revolver and seven rounds of ammunition seized from the vehicle on March 30, 2022. SA Sullivan confirmed that the revolver was a Taurus .38 Special Caliber Revolver. SA Sullivan determined that the revolver and ammunition were manufactured outside the state of California. Because the revolver and ammunition were found in California, he determined that they traveled in and affected interstate commerce.

## V. CONCLUSION

27. For the reasons described above, there is probable cause to believe that PALMER has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  6th  day of
May     , 2022.

_____
HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE